

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

FERRELLGAS, L.P.                                     CIVIL ACTION NO. 1:10-cv-00178

-vs-                                                                          JUDGE DRELL

JAMES W. MCCONATHY, et al.                      MAGISTRATE JUDGE KIRK

## R U L I N G

Before the Court is a Motion for Preliminary Injunction (Doc. 5) filed by the plaintiff. For the following reasons, the plaintiff's motion will be DENIED. Disposition will follow by a separate judgment.

### I.   Background

The plaintiff, Ferrellgas, L.P. ("Ferrellgas"), is a Louisiana propane retail and services company. Ferrellgas employed defendant James W. McConathy ("Mr. McConathy") as the operations manager of its service center in Bossier City, Louisiana. On March 24, 1998, Mr. McConathy signed a Ferrellgas Employee Agreement ("Agreement") which contained confidentiality, non-competition, and non-solicitation clauses. Most controversially, the non-competition/solicitation clause[1] provided that, "in the county or counties where Employee had contact with Ferrellgas customers on behalf of Ferrellgas," Mr. McConathy was not to "directly or indirectly, in person or through others, for the benefit of [Mr. McConathy] or another,

---

[1] As we will explore in more detail below, the language pertaining to competition and solicitation flows together in the Agreement. For the sake of clarity, we will refer to the provision as the "non-competition clause."

call upon, solicit, sell, divert, take away, deliver to, accept business or orders, or otherwise deal with Ferrellgas' Customers, nor shall Employee, in any capacity, assist another to do so."  (Doc. 1-1, p. 1, Part III, ¶ 6(a)).  The Agreement also contains provisions describing "Confidential Information," which Ferrellgas claims is valuable proprietary information under its exclusive ownership.[2]  As to the geographical boundaries of the non-competition clause, no specific parishes (or counties) are identified by name, or referenced in any attachments to the Agreement.  All Ferrellgas employees were required to sign the same contract.

Mr. McConathy's employment with Ferrellgas was terminated, suddenly and unexpectedly, on the evening of Friday, October 9, 2009.  According to Mr. McConathy, he was fired just before 5:00 P.M., left the building immediately, and returned the next day to collect his personal items.  His supervisor was waiting for him, and his computer had already been removed from his office.  Subsequently, Mr. McConathy was hired by defendant O'Nealgas, Inc. ("O'Nealgas"), a propane retailer in direct competition with Ferrellgas.  According to Ferrellgas, Mr. McConathy, with the assistance of O'Nealgas, is improperly using Confidential Information and other trade secrets to solicit Ferrellgas customers.

On February 8, 2010, Ferrellgas filed a complaint (Doc. 1), alleging: (1) Mr. McConathy has breached the terms of the Agreement by improperly using confidential and other trade secret information to solicit Ferrellgas customers; and (2)

---

[2]  This information consists, in part, of "Customer Information," a term defined in the Agreement basically as relevant proprietary and consumer-related information pertaining to past, current, and prospective Ferrellgas customers.  (Doc. 1-1, p. 3, Exh. A).

the Confidential Information used by Mr. McConathy constitutes "trade secrets" under the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. R.S. § 51:1431 *et seq.*, and as such, Mr. McConathy's use of that information constitutes "misappropriation" in violation of the LUTSA.[3]

The plaintiff moved for a preliminary injunction barring Mr. McConathy's solicitation of its customers and use of its trade secrets.  (Doc. 5).  The Court held a preliminary injunction hearing on February 26, 2010, at which several witnesses testified and counsel for both parties submitted arguments to the Court.  Mr. McConathy testified that he has solicited approximately ten of Ferrellgas's 8,500 to 10,000 customers, and has only been successful at acquiring the business of one Ferrellgas customer.  Mr. McConathy contends that: (1) the Agreement is invalid under Louisiana statutory law because it failed to list the parishes in which solicitation of Ferrellgas customers would be prohibited; (2) the Agreement contains a vague term used to describe the parishes contemplated by the agreement; and (3) the identity of and other information pertaining to Ferrellgas customers is not confidential information or trade secrets, and thus, its use cannot constitute a violation of the LUTSA.

In spite of a forum selection clause in the Agreement which provides that Missouri law would govern any disputes arising under the contract, we observed,

---

[3] The complaint seeks an order: (1) enjoining Mr. McConathy from soliciting Ferrellgas customers, interfering with Ferrellgas's relationships with its customers, or aiding others in doing so; (2) enjoining Mr. McConathy and O'Nealgas from using Ferrellgas's Customer Information; (3) enjoining Mr. McConathy from any further breaches of the Agreement, and ordering his compliance with the terms of the Agreement; (4) awarding compensatory damages; (5) awarding attorneys' fees; and (6) awarding any other just relief.

and the parties have agreed, that Louisiana law, as it stood in 1998, properly applies in this case. The contract was executed in Louisiana by a Louisiana resident at plaintiff's north Louisiana office. Following the hearing, the Court afforded the parties the opportunity to further brief the issues which the Court considered vital to the disposition of Ferrellgas's motion. After carefully reviewing all of the information submitted by the parties, the Court is now prepared to rule.

## II.    Law and Analysis

### A.    Preliminary Injunction

To be granted the "extraordinary equitable remedy" of a preliminary injunction, a plaintiff must establish four elements:

> (1) a substantial likelihood of success on the merits;
> (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied;
> (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and
> (4) that the injunction will not disserve the public interest.

Reliant Energy Servs., Inc. v. Enron Canada Corp., 349 F.3d 816, 826 n.7 (5th Cir. 2003) (quoting Hoover v. Morales, 164 F.3d 221, 224 (5th Cir. 1998)). In determining whether to grant a preliminary injunction, "the court must . . . state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2).

Given the extraordinary nature of the remedy, "a preliminary injunction . . . should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." Bluefield Water Ass'n, Inc. v. City of Starkville, 577 F.3d 250, 253 (5th Cir. 2009) (quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195-96 (5th Cir. 2003)). Furthermore, in accord with settled

4

precedent sanctioning less formal procedures at the preliminary injunction stage, the Court has considered evidence which may otherwise be inadmissible, including hearsay evidence.  See Sierra Club, Lone Star Chapter v. F.D.I.C., 992 F.2d 545, 551 (5th Cir. 1993) (internal citations omitted).  Notwithstanding procedural informalities, however, the record must clearly support the Court's decision as to whether to grant a preliminary injunction.  See Petrello v. Nath, No. 08-20718, 2009 WL 3416230, at *4 (5th Cir. Oct. 23, 2009).

Here, the principal focus of both parties has remained upon the likelihood that Ferrellgas's claims will be successful on the merits.  More specifically, the linchpin issues in this case are whether Ferrellgas will likely prevail in its attempt to enforce the non-solicitation clause in the Agreement, or obtain injunctive relief based upon the defendants' alleged violations of the LUTSA.

**B.    The Agreement**

Ferrellgas first argues that Mr. McConathy has solicited or provided services to Ferrellgas customers with whom he had contact as a Ferrellgas employee, in clear violation of the terms of the Agreement.  Mr. McConathy conceded that he has solicited Ferrellgas customers in parishes in which he had contact with those customers as a Ferrellgas employee.  In short, Mr. McConathy basically admitted that he has breached the spirit, if not the terms, of the Agreement.  However, the defendants argue that: (1) the non-competition clause was unenforceable under Louisiana law in force when the agreement was executed, because it fails to specifically list the parishes to which it applies; (2) the non-competition clause is

5

unenforceable because some of its terms are vague; and (3) the "Savings Clause" in the contract cannot be used to reform or delete invalid provisions because the Court would have to take a word-by-word approach to make the terms enforceable. Because we agree with the defendants' first argument, we will not address the latter two points in detail.

Louisiana public policy has strongly and consistently disfavored agreements restraining trade, such as  non-competition and non-solicitation agreements.  See SWAT 24 Shreveport Bossier, Inc. v. Bond, 808 So. 2d 294, 298 (La. 2001) (noting "the longstanding public policy of Louisiana . . . to prohibit or severely restrict [non-competition] agreements"); see also Millet v. Crump, 687 So. 2d 132, 135 (La. App. 5th Cir. 1996) ("Louisiana has a strong public policy against non-competition agreements.").  Accordingly, the Louisiana statute governing non-competition provisions begins with the statement that "[e]very [such] contract or agreement, or provision thereof . . . except as provided in this Section, shall be null and void."  La. R.S. § 23:921(A).

Valid non-solicitation clauses are therefore the exception, rather than the rule. Such exceptions are provided for within the statute.  The Louisiana Supreme Court made clear that, under Louisiana law in effect in 1998, non-solicitation clauses which met the statutory requirements were generally enforceable.  Specifically, the 1989 amendment to La. R.S. § 23:921 (which was still in force at the time that Mr. McConathy signed the Ferrellgas contract) "limited a valid noncompetition agreement to one in which the employee agreed to refrain from 'carrying on or

6

engaging in a business similar' to that of the former employer or from soliciting customers of the employer subject to certain other restrictions." <u>SWAT 24</u>, 808 So. 2d at 305.  The court interpreted this provision to mean that "an employee whose noncompetition agreement comports with the requirements of La. R.S. § 23:921(C) may be validly restricted from carrying on or engaging in his own competing business *and from soliciting customers of the employer for his own competing business or the competing business of another.*" <u>Id.</u> at 307 (emphasis added). Therefore, in principle, Ferrellgas was allowed to include a non-solicitation clause in its employment contracts which applied to former employees working for Ferrellgas competitors, such as O'Nealgas.

However, a non-solicitation clause must comport with the requirements of the governing Louisiana statute to be enforceable.  In general, a non-competition provision must be strictly limited to designated parishes and contain a maximum term of two years.  <u>See</u> La. R.S. § 23:921(C).  The statute provides, in relevant part, that an employee "may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer *within a specified parish or parishes*, municipality or municipalities, or parts thereof." <u>Id.</u> (emphasis added).[4]  While non-solicitation clauses are theoretically distinct from non-competition clauses, they must still independently satisfy the requirements of La. R.S. § 23:921(C).  <u>Vartech Sys., Inc. v. Hayden</u>, 951 So. 2d 247, 260-61 (La. App. 1st Cir. 2006).  The proper interpretation of

---

[4] This current language has remained unchanged since the agreement was signed, and therefore, we will refer to this provision in the present tense for the sake of clarity.

the italicized "geographical limitation" clause has generated a longstanding controversy among Louisiana courts.

Mr. McConathy argues, and the bulk of Louisiana courts agree, that a non-competition agreement must identify by name the parishes or municipalities to which it applies.  For instance, the majority of Louisiana appellate courts have held that "general reference in the agreement to whatever parishes, counties or municipalities the Company conducted business did not comply with the statute." Bell, 983 So. 2d at 933 (chronicling Louisiana cases in agreement); accord. L&B Transport, LLC v. Beech, 568 F. Supp. 2d 689, 693 (M.D. La. 2008) ("Because Section 921 speaks to non-competition within a specified parish or parishes, municipality or municipalities, or parts thereof, Louisiana courts have stated that non-competition agreements failing to specify the parish, municipality or parts thereof are unenforceable.") (internal quotation omitted).[5]  Similarly, Louisiana courts have consistently rejected cases in which the geographical limitation contained in a non-competition agreement was expressed only in terms of distance.[6]  In short, when a non-competition agreement fails to name or list the parishes to which it applies, most courts in

---

[5] Other instances abound in which courts have rejected non-competition clauses that merely referenced, rather than listed by name, the parishes or municipalities to which they applied. See, e.g., Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C., 17 So. 3d 999, 1003 (La. App. 2d Cir. 2010) (rejecting a non-competition clause which applied "to all parishes or counties ARR/FAC covers on a like business in said parishes or counties"); Aon Risk Servs., Inc. v. Ryan, 807 So. 2d 1058, 1060-61 (La. App. 2d Cir. 2002) ( invalidating a non-competition clause which covered "'whatever parishes, counties and municipalities the Company or Hall' . . . conducted business").

[6] See, e.g., Garcia v. Banfield Pet Hosp., Inc., No. 2009 CA 0466, 2010 WL 199263, at *3 (La. App. 1st Cir. Jan. 21, 2010) (invalidating a "non-competition agreement [which] prohibit[ed] competition 'within a six-mile (6) radius of either of the [Clinic's] places [of] business on the date of her termination of employment'"); Francois Chiropractic Ctr. v. Fidele, 630 So. 2d 923, 926 (La. App. 4th Cir. 1993) (refusing to enforce a non-competition agreement that precluded competition "within a ten (10) mile radius of the outer city limits of New Orleans, Louisiana").

Louisiana will find the agreement invalid.  See, e.g., Aon Risk Servs., 807 So. 2d at 1060-61.

By contrast, the Louisiana Third Circuit Court of Appeal "has held that the failure to identify each parish by name does not automatically nullify the agreement; rather, its validity depends on whether the area is 'identifiable.'" Monumental Life Ins. Co. v. Landry, 846 So. 2d 798, 801 (La. App. 3d Cir. 2003).  In one such opinion, the court found "identifiable" the parishes covered by a provision barring competition and solicitation "within the parishes in which [the plaintiff] carries on a like business." Petroleum Helicopters, Inc. v. Untereker, 731 So. 2d 965, 968 (La. App. 3rd Cir. 1999).   The court reasoned that the employee plaintiff would "surely be aware of the parishes in which [the employer defendant] conducts its business." Id. Ferrellgas has put forth a very similar rationale in this case.

The Louisiana Supreme Court has not definitively resolved this issue.  As such, we must observe the following standards in reaching our determination:

> When a state's highest court has not decided an issue involving the application of state law, "it is the duty of the federal court to determine, as best it can, what the highest court of the state would decide." "Although we are not bound by state appellate court decisions, we will not disregard them 'unless [we are] convinced by other persuasive data that the highest court of the state would decide otherwise.'"

Verdine v. Ensco Offshore Co., 255 F.3d 246, 252 (5th Cir. 2002) (quoting Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992)).

Ultimately, we find no reason to conclude that the Louisiana Supreme Court would deviate from the approach articulated by the majority of the state appellate courts.  The state's high court has held that "because [non-competition agreements]

9

are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." <u>Swat 24</u>, 808 So. 2d at 298.  Taking into account the strong public policy component involved, Louisiana courts have generally required "mechanical adherence to the requirements listed in the law (especially the geographical and time limitations)." <u>Sentilles Optical Servs., Div. of Senasco, Inc. v. Phillips</u>, 651 So. 2d 395, 399 (La. App. 2d Cir. 1995).  Moreover, in order to give effect to the word "specified" in the statute, courts must require that parishes be designated, rather than enforce general phraseology which would allow the geographical scope of  non-competition agreements to be expanded and contracted *ad infinitum*.  <u>See</u> <u>Aon Risk Servs.</u>, 807 So. 2d at 1060-61.

Again, the disputed clause in this case prohibits competition or solicitation "in the county or counties where Employee had contact with Ferrellgas customers on behalf of Ferrellgas."  (Doc. 1-1, p. 1, Part III, ¶ 6).  This clause substantially compares to language prohibiting competition in parishes where the employer conducts business, which has been consistently rejected by most Louisiana courts.  The language is also far more indefinite than a distance-oriented limitation.  Overall, the Agreement here not only fails to specifically list the parishes that it covers, but also does not make reference to any list or other data set which would clearly define its scope.  Therefore, we find that the non-competition provision does not conform to the requirements of La. R.S. § 23:921(C), at least as interpreted by the majority of Louisiana appellate courts.

Even if the Third Circuit interpretation of the statute were correct, however,

10

—

we find that the disputed provision in this case does not make the parishes which it covers sufficiently "identifiable."  We first must blow past the fact that the contract only refers to "counties," and does not mention Louisiana geography at all.  Then, although Ferrellgas has submitted to the Court in its filings a list of twenty parishes assigned to the Bossier City service center, no such listing was included in, attached to, or referenced by the contract that Mr. McConathy signed.  In fact, no documentary evidence before the Court indicates that those twenty parishes are the sole territory of the Bossier City service center.  Rather, the testimony and filings indicated that these parishes are in some way "assigned to" the Bossier City location.

Nonetheless, if a twenty-parish territory for the Bossier City service center had been made clear in the evidence, the geographical limitation in the Agreement contains further ambiguities.  Nowhere does the non-competition provision state that it applies in parishes assigned to any particular service center, or the service center at which the employee works.  Instead, the agreement specifies "the county or counties where Employee had *contact* with Ferrellgas customers on behalf of Ferrellgas."  (Doc. 1-1, p. 1, Part III, ¶ 6(a)).  Uncontroverted testimony adduced at the hearing showed that communicating with past, current, and prospective customers was at least a significant portion of Mr. McConathy's job.  The term "contact," however, is not defined in the Agreement.[7]  Mr. McConathy estimated that his

---

[7] Counsel for the plaintiff attempted to assemble a definition of the term "contact" from the definitions of two other terms in the Agreement, as well as its "plain and ordinary meaning."  (Doc. 20, pp. 5-6).  The complexity of that process, in and of itself, evidences the flaws in the provision.  Nevertheless, the definition is: "contacts of a commercial nature which occurred between the employee and any person or entity that has either (a) purchased propane-related goods or services within the last two years, or (b) been actively solicited by Ferrellgas or receive a quote, proposal or estimate with [sic] the last year."  (Doc. 20, p. 5).  Of course, the terms within this definition contain

11

customer base at Ferrellgas vacillated between 8,500 and 10,000 customers.  (Doc.

16, p. 86).  The retail propane market, by all accounts, is a highly volatile and

competitive one, with customers exchanging information and changing providers at a

rapid rate.  More importantly, however, Mr. McConathy testified that, in certain

circumstances, he interacted with potential customers, face-to-face, not only in parts

of Louisiana not "assigned to" Bossier City, but also in other states.

By any definition, then, use of the term "contact" to mark the geographical

boundaries of the Ferrellgas Agreement left those boundaries far from "identifiable."

Such vagueness is fatal to enforcement of the provision in Louisiana, even under the

more forgiving standards specified by the Third Circuit.  For instance, the court in

Gearheard v. De Puy Orthopaedics, Inc. rejected a non-competition provision which

applied "to the DePuy Territory in which [Gearheard] sold Products at the time of the

change in control," because the agreement failed to define the term "sold."  No.

CIV.A.99-1091, 1999 WL 638582, at *5 (E.D. La. 1999).  The court explained that "[t]he

term 'sold' in the non-competition provision at issue is more equivocal than the broad

terms 'carries on a like business,'" and thus, was "vague in its geographical scope

and . . . [failed to] substantially conform to the requirements of [the statute]."  Id.  The

term "contact" in the Ferrellgas Agreement suffers from this same deficiency.

In sum, application of the non-competition provision in the Ferrellgas

---

ambiguities (such as the use of the phrase "actively solicited").  What distinguishes this sort of
definition from even the most elastic construction of La. R.S. § 23:921 is that the employee would be
required to make a number of rather complex, time-consuming, and individualized determinations
regarding Ferrellgas customers.  Doing so would be challenging for a current employee of a business
with far less customers in a far less chaotic market.  Doing so for Mr. McConathy after he was
terminated from Ferrellgas, without access to Ferrellgas's records, would be overwhelming or
impossible.

Agreement is amorphous at best.  Given the strong public policy disfavoring restraints on competition, the mandate that we strictly construe non-competition agreements against the employer, the ambiguity of the terms of this Agreement, and the volatility of the market to which it applies, we find that the Ferrellgas Agreement is unenforceable.  In ruling on these particular facts, we in no way imply that a legally enforceable non-competition agreement could be drafted in this market.  We merely find that the Ferrellgas Agreement does not pass muster under governing Louisiana law.[8]

Moreover, we decline to reform the Agreement to bring it into conformity with La. R.S. § 23:921(C).  The Agreement contains a "Savings Clause" which states: "The provisions of this Agreement are separate and severable.  If any provision in this Agreement is determined to be void, that provision may be changed or deleted by a Court so that this Agreement may be enforced."  (Doc. 1-1, p. 2, Part IV, ¶ 9). Although Ferrellgas has not emphasized the potential application of this clause in its arguments to the Court, fair resolution of this case requires that we address it.

In some limited instances, Louisiana courts have applied severability clauses to enforce otherwise invalid non-competition agreements.  Most notably, the Louisiana Supreme Court in SWAT 24 reaffirmed its prior enforcement of a severability clause which "did not require a court to reform, redraft, or create a new

---

[8] It is of no moment that Mr. McConathy, as Ferrellgas's employee and agent, attempted to enforce the Agreement against an employee in the past.  Counsel for the plaintiff points to a prior lawsuit filed by Ferrellgas against a former employee, seeking injunctive relief based upon very similar grounds. Ferrellgas, L.P. v. Redwine, No. 1:07-cv-1036.  That case was resolved by settlement before the Court ruled upon the viability of the Agreement, and any positions taken by Mr. McConathy on the company's behalf in that proceeding do not impact our legal conclusions in this case.

13

agreement," but rather "required only that the offending portion of the agreement be severed." 808 So. 2d at 308-09. Ultimately the court found that "[t]he language of the Agreement makes it possible to excise the offending language from the noncompetition clause without doing undue damage to the remainder of the provision." Id.[9]

In this case, Mr. McConathy argues that the non-competition provision would either have to be excised or rewritten entirely to be enforced. We agree. The non-competition and non-solicitation provisions are largely intertwined in the Agreement.[10] Severing these clauses in some way would thus be a word-by-word exercise. Even so, the offending language is not readily replaceable. If the Court were to omit the "contact" clause in the Agreement, it would be forced to either generate and substitute its own clause, or leave the Agreement with no geographical scope whatsoever. Both alternatives are legally impermissible.

Interpreting the doctrine of reformation as it has been applied to Louisiana non-competition clauses, the court in L&B Transport, LLC declined to revise an otherwise invalid non-competition clause, stating:

[T]he majority of the courts in Louisiana decline to save invalid

---

[9] At least one appellate court viewed the SWAT 24 decision as an expansive one: "Prior to SWAT 24, Louisiana courts had allowed reformation of non-compete agreements that were overly broad, but only those that were unreasonable as to territory or time. The decision in SWAT 24 indicates a more expansive use of severability or savings clauses to reform and enforce non-compete agreements." Vartech Sys., Inc., 951 So.2d at 257 n.10 (citations omitted).

[10] The next paragraph in the Agreement, however, prohibits direct or indirect interference "with the business relationship between Ferrellgas and any Ferrellgas Customers." (Doc. 1-1, p. 2, Part III, ¶ 6(b)). To whatever extent this provision may be considered a part of the non-competition agreement, it is subject to the same geographical limitation as the preceding provision, and causes no independent enforceability issues.

14

non-competition provisions through reformation. If courts always reformed invalid non-competition provisions, "employers would be free to routinely present employees with grossly overbroad covenants not to compete." Furthermore, the reformation of these non-competition provisions would "place courts in the business of either saving or writing a contract that is not generally favored by law."

568 F. Supp. 2d at 693-94 (internal citations omitted).  Both scenarios contemplated by the court appear in this case: the non-competition provision presented in the Ferrellgas Agreement, as we have explained, is "grossly overbroad," and attempting to enforce the provision would impose upon the Court the improper task of rewriting the contract.  See id.  As such, the Savings Clause in the Agreement may not be applied in this case.

Therefore, the Court finds that the non-competition provision in the Ferrellgas Agreement is invalid and unenforceable under Louisiana law.  Ferrellgas's motion for preliminary injunction is accordingly DENIED as it applies to the Agreement.

## C.    The LUTSA

Ferrellgas next argues that Mr. McConathy and O'Nealgas are using Customer Information, as that term is defined in the Agreement, to solicit Ferrellgas customers.[11]  Ferrellgas maintains that Customer Information may properly be characterized as "trade secrets," as such information is compiled and kept secret at great effort and expense to the company.  They also claims that Mr. McConathy's

---

[11] "CustomerInformation" is defined in the Agreement as "information that Ferrellgas has developed, acquired, organized, compiled, or maintained regarding its customers, former customers, and prospective customers while developing and operating its business, including, but not limited to, information relating to their identity, location, personnel, usage of petroleum products, and incidental or related appliances, equipment and supplies, purchasing experience, delivery schedules and routing, payment habits, credit experience, renewal and expiration dates, and other terms and conditions contained in contracts and ownership of storage facilities." (Doc. 1-1, p. 3, Exh. A).

15

alleged use of such information constitutes "misappropriation" under the LUTSA, because Mr. McConathy was obligated to protect the secrecy of this information under the Agreement.  (Doc. 1-1, p. 1, Part III, ¶ 5).  The defendants, however, argue that: (1) customer identities are not trade secrets; (2) Ferrellgas cannot show that the defendants have "misappropriated" any information; and (3) Customer Information includes lists, but not an employee's general knowledge or memory regarding Ferrellgas customers.

Broadly, the LUTSA proscribes the misappropriation of information that constitutes "trade secrets."  See La. R.S. § 51:1431.  A plaintiff may obtain injunctive relief for either "[a]ctual or threatened misappropriation."  La. R.S. § 51:1432.[12]  "In order to show that the trade secrets have been misappropriated, [the employer] would have to prove that (1) a trade secret existed, and (2) that they were misappropriated by the [employee]."  Advance Prods. & Sys., Inc. v. Simon, 944 So. 2d 788, 793 (La. App. 3d Cir. 2006).[13]

The LUTSA provides a specific definition of the term "trade secret":

"Trade secret" means information, including a formula, pattern,

---

[12]  The statute also contains provisions allowing claimants to recover damages for actual losses and unjust enrichment.  See La. R.S. § 51:1433.

[13]  The term "misappropriation" is defined as

disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

La. R.S. § 51:1431(2).  There is a logical argument that Mr. McConathy's use of Ferrellgas's Customer Information would be "misappropriation," if he had such information and if it constituted "trade secrets."  The latter two issues, however, are in serious doubt, and will thus occupy the bulk of our analysis.

16

compilation, program, device, method, technique, or process, that . . .
derives independent economic value, actual or potential, from not being
generally known to and not being readily ascertainable by proper means
by other persons who can obtain economic value from its disclosure or
use, and . . . is the subject of efforts that are reasonable under the
circumstances to maintain its secrecy.

La. R.S. § 51:1431(4).  Phrased differently, "[a] trade secret is information that has

independent economic value because it is not generally known or readily

ascertainable and efforts are taken to maintain the information's secrecy." SDT

Indus., Inc. v. Leeper, 793 So. 2d 327, 333 (La. App. 2d Cir. 2001).  Determining

whether information qualifies as trade secrets is a question of fact.  Corrosion

Specialties and Supply, Inc. v. Dicharry, 631 So. 2d 1389, 1391 (La. App. 5th Cir. 1994).

However, Louisiana courts have held that "[a] customer list or special pricing list may

be a trade secret if efforts are made to maintain its secrecy."  Pontchartrain Med.

Labs, Inc. v. Roche Biomedical Labs., Inc., 677 So. 2d 1086, 1090 (La. App. 1st Cir.

1996) (citing Wyatt v. PO2, Inc., 651 So. 2d 359 (La. App. 2d Cir. 1995); see also Core

v. Martin, 543 So. 2d 619, 621 (La. App. 2d Cir. 1989) ("Although customer lists may

constitute trade secrets, the threshold inquiry in every trade secrecy case is whether

a legally protectable trade secret exists in fact.").

In this case, Ferrellgas maintains detailed customer records on its computer

system, to which all employees have access.  This may raise an issue of whether

appropriate efforts are made by Ferrellgas to keep that data secret.  However, that

issue is moot, because there is no evidence, and no formal allegation by Ferrellgas,

that Mr. McConathy is using or is in possession of any type of physical customer list.

While there was some testimony at the preliminary injunction hearing expressing

17

suspicion that Mr. McConathy may have retained a customer list, or other Ferrellgas data, no evidence to corroborate such an allegation has been presented to the Court. Instead, Mr. McConathy testified that he was suddenly terminated, his computer was removed from his office, he removed his personal items under the watch of his supervisor, and that he took nothing belonging to Ferrellgas upon his termination.

Ferrellgas is correct that, under the LUTSA, there is no explicit requirement that information must be in writing in order to be considered "trade secrets." Thus, according to Ferrellgas, the types of information that Mr. McConathy is purportedly utilizing which may constitute trade secrets are: (1) expertise that Mr. McConathy acquired as the manager of Ferrellgas's Bossier City service center, such as knowledge of "contract terms, credit information, volume usage, propane decision makers, pricing arrangements, and margins" (Doc. 20, p. 10) pertaining to Ferrellgas's customers ("customer information"); and (2) the identities of and relationships with Ferrellgas customers ("customer identities").

As to the first category, there is no evidence before the Court indicating that Mr. McConathy is in possession of any customer information beyond what he may remember from his frequent interactions with customers. Put simply, Ferrellgas has presented no evidence that Mr. McConathy took any customer files, has any means of accessing Ferrelgas's record system, or otherwise retained physical data relative to its customers. Mr. McConathy's memory as to the reliability, value, and operations of certain customers does not constitute "trade secrets." See Millet, 687 So. 2d at 136 (holding that information that an insurance agent "could recall . . . about renewals on

18

some of her former clients because of the long-term relationship with them through her business as well as socially" did not constitute trade secrets). Moreover, the expertise and knowledge acquired by Mr. McConathy is not protected under the LUTSA. Louisiana courts have repeatedly emphasized that "[a] former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in a former employment." Boncosky Servs., Inc. v. Lampo, 751 So. 2d 278, 287 (La. App. 1st Cir. 1999); see also Ashland Chemical, Inc. v. Lombardino, No. 92-2434, 1993 WL 390147, at *4 (E.D. La. Sept. 23, 1993) ("Clearly, a former employee is 'allowed to rely on his memory or general knowledge and skill gained in his former employment' without violating a nondisclosure covenant.") (quoting NCH Corp. v. Broyles, 749 F.2d 247, 254 (5th Cir. 1985)).

Additionally, a number of facts cast serious doubt upon the secrecy of customer information in general in this case. Testimony at the hearing indicated that, while possibly time-consuming to compile, most or all of Ferrellgas's customer information may be obtained by lawful means. O'Nealgas has frequently solicited Ferrellgas customers, and has likely gathered such information on its own. Furthermore, gas purchasing customers in this market often disclose contract terms and pricing arrangements amongst themselves and to competing providers, in order to obtain more favorable terms, according to the hearing testimony. Much of the information sought to be protected by Ferrellgas is subject to frequent change given the nature of the industry in general and this market in particular.

19

Perhaps most importantly, there is no evidence before the Court of an "[a]ctual or threatened misappropriation" of any customer information which may justify the issuance of an injunction.  See La. R.S. § 51:1432..  Even if Mr. McConathy memorized some information related to some of Ferrellgas's thousands of customers, and even if that information constituted "trade secrets," there has been no firm indication that he used such information to solicit Ferrellgas customers as an employee of O'Nealgas.

Thus, we are left only with the issue of whether Mr. McConathy's memory of some Ferrellgas customers may be protected under the LUTSA.  We find that the identity of Ferrellgas's customers on these facts may not properly be characterized as "trade secrets."  Any such identities that Mr. McConathy recalls were learned through his experience with Ferrellgas, and have not been retained in list form.  Mr. McConathy's awareness of customer identities, along with some customer information, falls within the general category of knowledge, savvy, and skills which a former employee is entitled to utilize in competition with a former employer.  See Boncosky Servs., Inc. v. Lampo, 751 So. 2d 278, 287 (La. App. 1st Cir. 1999).  To repeat, Mr. McConathy's memory of the names and addresses of his customers does not constitute protected "trade secrets":

> Under the circumstances of this case, [the defendant's] mental knowledge, from years of employment with [the plaintiff], of the names and addresses of the plaintiff's customers are not trade secrets since they are easily ascertainable and generally available to the public. Louisiana courts have consistently declined to issue an injunction against a former employee's solicitation of customers when the former employee relied on his memory and did not have a list.

L & B Transport, LLC v. Busby, No. 06-310-FJP-SCR, 2008 WL 4845103, at * (M.D. La.

20

Feb. 12, 2008) (quoting Weighing & Control Servs., Inc. v. Bert Williams, No. 88-5211,

2008 WL 4845103, at *1 (E.D. La. Jan. 24, 2009); see also Millet, 687 So. 2d at 135-36

(holding that customer names, addresses, and renewal times were not "trade

secrets" because the former employee committed much of this information to

memory, or was reminded of the information when former customers initiated

contact).[14]

A closely analogous case involved a claim for damages by a plaintiff nurse

staffing business against its former regional director, brought under the Louisiana

Unfair Trade Practice and Consumer Protection Law, La. R.S. 51:1401, et seq., a

statute comparable in many ways to the LUTSA.  Nursing Enters., Inc. v. Marr, 719

So. 2d 524, 526 (La. App. 2d Cir. 1998).  In that case, the defendant resigned from her

position and formed her own nurse staffing business in competition with the plaintiff.

Id. at 526-27.  After finding no evidence that the defendant took any property (such as

an actual list of customers) with her upon resigning, the court next considered

whether the defendant "misappropriated information considered to be trade secrets

which she obtained during her employment."  Id. at 529.  In denying the plaintiff's

unfair trade practices claim, the court reasoned as follows:

> The evidence shows that [the defendant] did not violate her
> fiduciary duty to Nursing [the plaintiff] by using its trade secrets in the
> formation and operation of Lifeline. In fact, the information Nursing
> alleges [the defendant] misappropriated does not qualify as trade
> secrets. As for nurse lists, the evidence shows that [the defendant] . . .

---

[14] We recognize that the contact information for some customers in this area may not be highly
publicized.  But considering the free flow of information in the propane gas market, customer identities
may be fairly characterized as "generally accessible," at least among competing providers in the same
geographical area.

21

had a personal relationship with many of these nurses and one could
expect the nurses to follow [the defendant] if they were being treated
well by her and the company with which she was associated. In
addition, these nurses were not exclusive to one agency. The testimony
showed that nurses usually signed on with more that one agency to
ensure they had consistent work. Finally, [the defendant] testified that
she was a member of an organization through which she could receive a
list of all nurses in the state of Louisiana.

Nursing claims that [the defendant] used either client lists or the
relationships established with clients during her employment with
Nursing to lure those clients, especially Willis-Knighton Hospital, to do
business with Lifeline. As stated by [the defendant], the names and
numbers of the hospitals and other medical providers is easily
accessible through the local telephone book. . . .

Nursing also claims that [the defendant] misappropriated
information related to nurses' salaries and client charges. Again, even if
proven to be true, this information does not constitute trade secrets. The
testimony shows that nurses routinely volunteered how much they were
being paid by an agency. [The defendant] testified that she and other
agency directors exchanged information and that the hospitals would
release information relating to other agencies' charges in an effort to get
a better contract price from her.

Id.

The circumstances before the Court are highly comparable to the facts in

Nursing Enters., Inc..  Developing personal relationships with clients was an

important aspect of Mr. McConathy's job at Ferrellgas.  He testified that the one and

only Ferrellgas customer who has come to O'Nealgas since his employment initiated

contact with him.  (Doc. 16, pp. 49-50, 77, 83-84).  According to the evidence,

customers routinely change providers in the propane industry, and share a great deal

of information regarding their arrangements, such as contract terms, prices, and

volume with competing providers in order to obtain lower quotes.  Information

passes between customers and competitors very frequently, and thus, rival

22

companies often know a great deal about one another's operations.  As we have noted, and the evidence explains, customers may volunteer (or even fabricate) information to obtain more favorable terms.  Before Mr. McConathy was hired, O'Nealgas very likely knew not only the identity of many of Ferrellgas's customers, but also information relative to those customers' "contract terms, credit information, volume usage, propane decision makers, pricing arrangements, and margins."  (Doc. 20, p. 10).

Considering all of these circumstances, we find that the information sought to be protected by Ferrellgas does not constitute "trade secrets" under the LUTSA.  The evidence does not reflect that Mr. McConathy is in possession of any information beyond the identities, and perhaps the general operations, of certain Ferrellgas customers.  His knowledge and skill was acquired through experience and has been retained only in his memory.  Moreover, the disputed information is obtainable through lawful means, and, by all accounts, is disseminated freely among customers and competitors.   Even if this information constituted "trade secrets," there is no evidence before the Court to indicate that Mr. McConathy used any information to solicit Ferrellgas customers, aside from basic identifying information.  Therefore, Ferrellgas's motion for preliminary injunction must be DENIED as to its claim that Mr. McConathy and O'Nealgas have violated the LUTSA.

## IV.   Conclusion

For the foregoing reasons, the plaintiff's Motion for Preliminary Injunction (Doc. 5) will be DENIED.  In light of this ruling, the parties will be ORDERED to inform the

Court as to whether they intend to pursue the merits of this dispute within thirty days from the date of the issuance of this ruling.

SIGNED on this 15 day of March, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

24